## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

VICTOR TEON LINDSEY, II,

                    Petitioner,

     v.

E.J. THOMAS,

                    Respondent.

CIVIL ACTION NOS. 1:14-CV-00039,
  1:14-CV-00054, AND 1:14-CV-00096

(KANE, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

The Court has received and filed a series of three petitions for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2241, signed and dated by the Petitioner, Victor Teon Lindsey. The first petition, Case No. 1:14-CV-00039 (Petition 1), was filed by the Court on January 13, 2014 and dated by the Petitioner on January 8, 2014. (Petition 1, Doc. 1). The second petition, 1:14-CV-00054 (Petition 2), was filed by the Court on January 14, 2014 and dated by the Petitioner on January 8, 2014. (Petition 2, Doc. 1). The final petition, 1:14-CV-00096 (Petition 3), was filed by the Court on January 14, 2014 and dated by the Petitioner on January 6, 2014. (Petition 3, Doc. 1). Petitioner is an inmate incarcerated at USP Lewisburg, which is located in Lewisburg, Pennsylvania. Because Petitioner asserts the same challenges in each petition, this Report addresses all three of Lindsey's petitions.

## I.   BACKGROUND

Petitioner is currently serving a federal sentence imposed by the United States District Court for the District of New Mexico on April 1, 2003 for various drugs and firearms charges. (Petition 1, Doc. 1, ¶ 4). Each of the three petitions now before this Court stem from allegations that Petitioner's due process rights were violated during disciplinary hearings after which he

was found guilty of several prohibited acts while incarcerated at USP Florence in Florence, Colorado.

      A.   PETITION 1: CLAIMS OF HABEAS PETITION DOCKET NO. 1:14-CV-00039

On April 5, 2011, Incident Report No. 2146523 was issued against Petitioner by Officer M. Thompson charging him with violations of Code 101 "Assaulting any person causing serious injury (Staff)," and Code 307 "Refusing an order." (Petition 1, Doc. 8-2, at 7-9). Thompson described the incident as follows:

> On April 5, 2011 at approximately 9:25 a.m., inmate Lindsey, Victor Reg. No. (199440-051) was being escorted back to his assigned cell z03-226. Inmate Lindsey became highly agitated, and aggressive toward other staff and me, once he had arrived at the cell door . . . . and would not walk any farther toward the cell. . . . At this time inmate Lindsey entered his assigned cell. Officer N. Suddoth began taking the restraints off inmate Lindsey after the door had been secured. Once one hand had been removed from the restraints Lindsey turned around and attempted to run away from the tray slot while he pulled his hand straight up against the white box's ledge. Suddoth's arm got dragged into the tray slot during this incident. Once I had noticed Suddoth's arm inside the slot, I reached in to assist Officer Suddoth in remaining in control of the hand restraint. Once control had been gained, the other hand was removed from the hand restraint. Officer Suddoth suffered serious injuries to his left wrist and had to be shipped out to an outside medical facility. I also suffered abrasions to my right forearm.

(Petition 1, Doc. 8-2, at 7).

The incident was referred to the Federal Bureau of Investigations (FBI) for possible prosecution, which the FBI declined on August 24, 2011. (Petition 1, Doc. 8, at 4-5). Petitioner was provided a copy of the incident report and advised of his right to remain silent that same day. (Petition 1, Doc. 8-2, at 7). Petitioner requested that video of the incident be reviewed and that inmates testify at his hearing. (Petition 1, Doc. 8-2, at 8). The matter was then referred to the Unit Disciplinary Committee (UDC) for an initial hearing. (Petition 1, Doc. 8-2, at 12-14).

Petitioner chose not to attend the UDC hearing on August 31, 2011. (Petition 1, Doc. 8-

2, at 14). Based on the reported evidence, the UDC chose to refer the incident report to the Discipline Hearing Officer (DHO). (Petition 1, Doc. 8-2, at 12-13). After the UDC hearing, Petitioner was provided "Notice of Discipline Hearing before the DHO" and "Inmate Rights at Discipline Hearing" forms, but refused to sign them. (Petition 1, Doc. 8-2, at 12-13). A staff member instead signed the forms and indicated that he advised Petitioner of his rights, and that Petitioner chose not to call witnesses or have a staff representative present for the DHO hearing.[1] (Petition 1, Doc. 8-2, at 13).

The DHO hearing was held on October 7, 2011. (Petition 1, Doc. 8-2, at 9). The DHO report states that Petitioner declined a staff representative and did not request witnesses,

---

[1] The DHO hearing rights that Petitioner was advised of included:

1. The right to have a written copy of the charge(s) against [him] at least 24 hours prior to appearing before the [DHO];
2. The right to have a full-time member of the staff who is reasonably available to represent [him] before the [DHO];
3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in [his] behalf, provided institutional safety would not be jeopardized;
4. The right to present a statement or to remain silent. [His] silence may be used to draw an adverse inference against [him]. However, [his] silence alone may not be used to support a finding that [he] committed a prohibited act;
5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If [he] elect[s] not to appear before the DHO, [he] may still have witnesses and a staff representative appear on [his] behalf;
6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and,
7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendar days of the DHO's decision and disposition.

(Petition 1, Doc. 8-2, at 12).

although the Petitioner had indicated that he wished to have inmates testify on his behalf when he first received a copy of the incident report on August 24, 2011. (Petition 1, Doc. 8-2, at 8-9). Petitioner was removed from the hearing due to his continuous disruptions and assertions that the hearing was untimely, and without presenting any evidence on his own behalf. (Petition 1, Doc. 8-2, at 9-10). After reviewing the incident report and photographs of the staff members' injuries, the DHO concluded that the Petitioner committed the prohibited acts as charged. (Petition 1, Doc. 8-2, at 10). The following sanctions were imposed on Petitioner by the DHO: (1) disallowance of 55 days good conduct time (41 days for the Code 101 violation and 14 days for Code 307); (2) forfeiture of 55 days non-vested good conduct time (41 days for the Code 101 violation and 14 days for Code 307); (3) 90 days disciplinary segregation (60 days for the Code 101 violation and 30 days for Code 307); and (4) 270 days loss of commissary, visiting, phone, email and personal property privileges (180 days for the Code 101 violation and 90 days for Code 307). (Petition 1, Doc. 8-2, at 11). The DHO's written decision was issued on January 23, 2012, and a copy of the report was delivered to Petitioner on January 27, 2012. (Petition 1, Doc. 8-2, at 11).

Petitioner filed an appeal of the DHO's decision to the Regional Director, received on February 8, 2012, in which Petitioner argued that the hearing was untimely and that he was denied due process because the DHO did not call Petitioner's staff representative or witnesses. (Petition 1, Doc. 8-2, at 15-16). On March 5, 2012, the Regional Director remanded the incident report back to the DHO to ensure that Petitioner received a fair hearing. (Petition 1, Doc. 8-2, at 16).

Petitioner appeared before the UDC four days later, but only stated that he wanted the Warden to provide a memo authorizing the untimely hearing. (Petition 1, Doc. 8-2, at 17). The

UDC again decided to refer the incident report to the DHO, and again provided Petitioner with "Notice of Discipline Hearing before the DHO" and "Inmate Rights at Discipline Hearing" forms that he refused to sign. (Petition 1, Doc. 8-2, at 17-19). On this occasion, Petitioner requested witnesses to testify and for Officer Davis to serve as his staff representative. (Petition 1, Doc. 8-2, at 19). However, Officer Davis declined this request, and Petitioner subsequently decided he did not want a replacement staff representative or to call any witnesses at the rehearing. (Petition 1, Doc. 8-2, at 19-20). The DHO rehearing occurred on April 6, 2012. (Petition 1, Doc. 8-2, at 21). The DHO confirmed that Petitioner voluntarily declined a replacement staff representative and the right to call witnesses. (Petition 1, Doc. 8-2, at 22). When given the opportunity to speak on his own behalf, Petitioner denied the charges and again indicated that he thought the hearing was untimely. (Petition 1, Doc. 8-2, at 22). Petitioner did not request video review, and the DHO noted that there was no video of the actions inside Petitioner's cell, anyway. (Petition 1, Doc. 8-2, at 22). The DHO decided to reimpose his initial sanctions, again citing as evidence the incident report and accounts of the staff members' injuries. (Petition 1, Doc. 8-2, at 22-23). The DHO's written decision was issued on September 19, 2012, and Petitioner received a copy of the report on January 16, 2013. (Petition 1, Doc. 8-2, at 23).

On November 5, 2013, the Regional Director received Petitioner's appeal of the DHO rehearing decision, Administrative Remedy Identification No. 757069-R1. (Petition 1, Doc. 8-2, at 2, 49). The Regional Director rejected the appeal on November 8, 2013, because Petitioner failed to include a copy of the DHO report he was appealing. (Petition 1, Doc. 8-2, at 49). The rejection notice provided leave for Petitioner to resubmit his appeal with the DHO report included. (Petition 1, Doc. 8-2, at 49). Petitioner does not contend that he resubmitted his

appeal to the Regional Office in the appropriate format. Instead, Petitioner appealed to the Federal Bureau of Prisons (BOP) Central Office (Central Office), Administrative Remedy Identification No. 757069-A1, which was received on December 9, 2013. (Petition 1, Doc. 8-2, at 55). On December 19, 2013, the Central Office also rejected Petitioner's appeal, and instructed Petitioner to follow the directions provided in the Regional Director's rejection notice. (Petition 1, Doc. 8-2, at 55). Rather than supplementing his appeal as instructed, Petitioner next filed the instant habeas petition, 1:14-CV-00039, received by this Court on January 13, 2014. (Petition 1, Doc. 1).

B.     PETITION 2: CLAIMS OF HABEAS PETITION DOCKET NO. 1:14-CV-00054

On October 27, 2011, Incident Report No. 2226926 was issued against Petitioner by Officer R. Turner charging him with violations of Code 296 "Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures," and Code 334(a) "Conducting a business." (Petition 2, Doc. 6-2, at 7). Turner described the incident as follows:

> On October 27, 2011, while monitoring inmate outgoing mail, I discovered a letter addressed to [redacted], with a return address for inmate [redacted], USP Florence. I recognized the handwriting as that [o]f inmate Victor Lindsey, Reg. No. 199440-051. I opened the letter and found that inmate Lindsey was in fact using inmate [redacted]'s name and Reg. No. in order to circumvent mail monitoring procedures. In addition, Lindsey was setting up a web page in order to sell vehicle tire rims. Inmates are prohibited from conducting or directing an investment transaction without staff authorization.

(Petition 2, Doc. 6-2, at 7).

The following day, Petitioner was provided a copy of the incident report and advised of his right to remain silent. (Petition 2, Doc. 6-2, at 7-8). Petitioner denied involvement and also requested assistance from a staff representative. (Petition 2, Doc. 6-2, at 7-8). The matter was then referred to the UDC for an initial hearing. (Petition 2, Doc. 6-2, at 7-8).

On October 31, 2011, the UDC reviewed the incident report with Petitioner in

attendance. (Petition 2, Doc. 6-2, at 7). Based on the reported evidence, the UDC chose to refer the incident report to DHO. (Petition 2, Doc. 6-2, at 7). After the UDC hearing, Petitioner was provided "Notice of Discipline Hearing before the DHO" and "Inmate Rights at Discipline Hearing" forms, but refused to sign them. (Petition 2, Doc. 6-2, at 9-11). A staff member instead signed the forms and indicated that Petitioner had been advised of his rights, and that Petitioner wished to call witnesses and have Officer Davis serve as his staff representative at the DHO hearing. (Petition 2, Doc. 6-2, at 10-11). On or about December 6, 2011, however, Petitioner was informed that Officer Davis could not represent him at the DHO hearing because Officer Davis would be on military leave. (Petition 2, Doc. 6-2, at 11). Petitioner then declined to have Officer Leggitt serve as a replacement staff representative, and also communicated that he no longer wished to call witnesses for his DHO hearing. (Petition 2, Doc. 6-2, at 11).

The DHO hearing was held on January 6, 2012. (Petition 2, Doc. 6-2, at 11). Petitioner was appointed J. Houston, religious services assistant, as his staff representative for the hearing. (Petition 2, Doc. 6-2, at 12, 14). However, Petitioner maintained that he did not wish to present witnesses, and also admitted stating that he had written the letter. (Petition 2, Doc. 6-2, at 14). On the basis of this admission, the DHO concluded that the Petitioner committed the prohibited acts as charged. (Petition 2, Doc. 6-2, at 14). The following sanctions were imposed on Petitioner by the DHO: (1) disallowance of 41 days good conduct time (27 days for the Code 296 violation and 14 days for Code 334(a)); (2) 45 days disciplinary segregation (30 days for the Code 296 violation and 15 days for Code 334(a)); and (3) 210 days loss of commissary, visiting, phone, email and personal property privileges (120 days for the Code 296 violation and 90 days for Code 334(a)). (Petition 2, Doc. 6-2, at 14). The DHO's written decision was issued on April 23, 2012, and a copy of the report was delivered to Petitioner on May 11, 2012. (Petition 2,

Doc. 6-2, at 15).

Between October 10, 2013 and November 5, 2013, Petitioner filed a series of nineteen appeals challenging various disciplinary actions taken against him. (Administrative Remedy Generalized Retrieval, Petition 2, Doc. 6-2, at 32-42). Petitioner asserts that two of these appeals, Administrative Remedy Identification Nos. 754039-R1 and 757063-R1, challenged this particular incident report.[2] (Petition 2, Doc. 1, ¶¶ 6-7). Remedy No. 754039-R1 was received by the Regional Director on October 10, 2013, and rejected as untimely on October 21, 2013. (Petition 2, Doc. 6-2, at 33). Instead of responding to the Regional Director with an explanation for his untimeliness, Petitioner appealed to the Central Office. (Petition 2, Doc. 6-2, at 42). Remedy No. 754039-A1 was received by the Central Office on November 5, 2013, and rejected on November 18, 2013. (Petition 2, Doc. 6-2, at 42). The Central Office instructed Petitioner that he needed to resubmit his appeal with the Regional Director and include a memo explaining why his appeal was untimely. (Petition 2, Doc. 6-2, at 42). Petitioner failed to resubmit this appeal as instructed. (Administrative Remedy Generalized Retrieval, Petition 2, Doc. 6-2, at 45-50). Remedy No. 757063-R1 was received by the Regional Director on November 4, 2013, and rejected on November 8, 2013 because Petitioner failed to include a copy of the DHO report he was appealing. (Petition 2, Doc. 6-2, at 40). The rejection notice provided leave for Petitioner to resubmit his appeal with the DHO report included. (Petition 2, Doc. 6-2, at 40). Petitioner does not contend that he resubmitted his appeal to the Regional Office in the appropriate format. Instead, Petitioner appealed to the Central Office, Remedy

---

[2] Petitioner also alleges that Administrative Remedy No. 754039-R1 appealed the incident report that forms the basis of Petition 3. (Petition 3, Doc. 1, ¶ 6). However, Petitioner does not provide the appeal itself, or any evidence that the appeal relates to either of the incident reports from which Petitions 2 and 3 arise.

No. 757063-A1, which was received on December 2, 2013. (Petition 2, Doc. 6-2, at 46). On December 17, 2013, the Central Office also rejected Petitioner's appeal, and instructed Petitioner to follow the directions provided in the Regional Director's rejection notice. (Petition 2, Doc. 6-2, at 46). Rather than resubmitting his appeal to the Regional Director as instructed, Petitioner next filed the instant habeas petition, 1:14-CV-00054, received by this Court on January 14, 2014. (Petition 2, Doc. 1).

C.    PETITION 3: CLAIMS OF HABEAS PETITION DOCKET NO. 1:14-CV-00096

On April 5, 2012, Incident Report No. 2288984 was issued against Petitioner by Acting Activities Lieutenant T. Caudill charging him with violations of Code 111a "Introduction of drugs," Code 196 "Use of the mail for an illegal purpose," and Code 296 "Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures." (Petition 3, Doc. 6-2, at 7-8). Caudill described the incident as follows:

> On 4/5/12 at approximately 11:14 PM while conducting irregular rounds on A-2 range at cell 212 assigned to inmate Lindsey, Victor register 199440-051 I picked up a large manila envelope from inmate Lindsey that was presealed with inmate [redacted]'s name and register number for the return address and contained a second envelope. Upon returning to the office the mail was not marked for legal mail and was subsequently searched. The letter in the envelope contained specific detailed instructions and illustrations on utilizing the legal mail system and a false attorney to introduce marijuana into the Federal Bureau of Prisons USP Florence. The letter was also sent out with previously used postage stamps on both the inner and outer envelopes.

(Petition 3, Doc. 6-2, at 7).

The following day, Petitioner was provided a copy of the incident report and advised of his right to remain silent. (Petition 3, Doc. 6-2, at 7-8). Petitioner denied the charges but did not request any witnesses to speak on his behalf. (Petition 3, Doc. 6-2, at 8). The matter was then referred to the UDC for an initial hearing. (Petition 3, Doc. 6-2, at 8).

Petitioner refused to attend the UDC hearing held on April 9, 2012. (Petition 3, Doc. 6-

2, at 7). Based on the evidence reported by Caudill, the UDC chose to refer the incident report to the DHO. (Petition 3, Doc. 6-2, at 7). After the UDC hearing, Petitioner was provided "Notice of Discipline Hearing before the DHO" and "Inmate Rights at Discipline Hearing" forms, but refused to sign them. (Petition 3, Doc. 6-2, at 9-10). A staff member instead signed the forms and indicated that Petitioner had been advised of his rights. (Petition 3, Doc. 6-2, at 9-10). However, the Notice of Discipline Hearing before the DHO did not indicate whether Petitioner wished to have a staff representative, and initially indicated that Petitioner wanted to call witnesses, before that mark was crossed out and replaced with a notation that Petitioner did not wish to have witnesses. (Petition 3, Doc. 6-2, at 10).

The DHO hearing was held on April 26, 2012. (Petition 3, Doc. 6-2, at 11). The DHO report states that Petitioner declined a staff representative at the hearing, but did request a witness in the form of a statement provided by his cellmate. (Petition 3, Doc. 6-2, at 11-12). The statement read:

> The following Incident report of 111a, 196 and 296 which was wrote on Victor Lindsey #199444-051 was something that I take full responsibility for because I sent mail out in his name without his awareness this incident Report was issued to him on 4.6.12. If you have any misunderstanding with this Affidavit of Truth, please contact me.

(Petition 3, Doc. 6-2, at 11).

The DHO also considered several pages of documentary evidence provided by prison staff that included samples of Petitioner's own handwriting. (Petition 3, Doc. 6-2, at 11-30). The DHO found that the handwriting in the letter intercepted by Caudill was inconsistent with the cellmate's handwriting provided in his written statement, but matched the Petitioner's own handwriting samples. (Petition 3, Doc. 6-2, at 12). On the basis of this determination, the DHO concluded that Petitioner committed the prohibited acts as charged. (Petition 3, Doc. 6-2, at

12). The following sanctions were imposed on Petitioner by the DHO: (1) disallowance of 3 days good conduct time (1 day for each Code violation); (2) forfeiture of 106 days non-vested good conduct time (40 days for the Code 111a violation, 40 days for the Code 196 violation, and 26 days for Code 296); (3) 150 days disciplinary segregation (60 days for the Code 111a violation, 60 days for the Code 196 violation, and 30 days for Code 296); (4) 270 days loss of commissary, visiting, phone, email and personal property privileges (90 days for each Code violation); and (5) a $59 monetary fine ($34 for the Code 111a violation, $17 for the Code 196 violation, and $8 for Code 296). (Petition 3, Doc. 6-2, at 13). The DHO's written decision was issued on September 19, 2012, and a copy of the report was delivered to Petitioner on October 11, 2012. (Petition 3, Doc. 6-2, at 13).

Between October 10, 2013 and November 5, 2013, Petitioner filed a series of nineteen appeals challenging various disciplinary actions taken against him. (Administrative Remedy Generalized Retrieval, Petition 3, Doc. 6-2, at 47-57). Petitioner asserts that two of these appeals, Administrative Remedy Identification Nos. 754039-R1 and 757046-R1, challenged this particular incident report. (Petition 3, Doc. 1 ¶¶ 6-8). As noted above, Remedy No. 754039-R1 was never accepted by the Regional Director or the Central Office for a decision on the merits. *See supra* note 2 and accompanying text. Remedy No. 757046-R1 was received by the Regional Director on November 4, 2013, and rejected on November 8, 2013 because Petitioner failed to include a copy of the DHO report he was appealing. (Petition 3, Doc. 6-2, at 54). The rejection notice provided leave for Petitioner to resubmit his appeal with the DHO report included. (Petition 3, Doc. 6-2, at 54). Petitioner does not contend that he resubmitted his appeal to the Regional Office in the appropriate format. Petitioner instead appealed to the Central Office, Remedy No. 757046-A1, which was received on December 9, 2013. (Petition 3, Doc. 6-2, at

63). On December 19, 2013, the Central Office also rejected Petitioner's appeal, and instructed Petitioner to follow the directions provided in the Regional Director's rejection notice. (Petition 3, Doc. 6-2, at 63). Rather than resubmitting his appeal to the Regional Director as instructed, Petitioner next filed the instant habeas petition, 1:14-CV-00096, received by this Court on January 14, 2014.

## II.   LEGAL STANDARD

Under § 2241, a federal inmate may challenge the execution of his sentence—such as the loss of good-time credits—in the district court for the federal judicial district where the inmate is in custody. *See* 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 443–44 (2004); *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). Ordinarily, however, a federal inmate must properly exhaust his administrative remedies before filing a petition for writ of habeas corpus pursuant to § 2241. *Moscato v. Fed. Bureau of Prisons,* 98 F.3d 757, 760 (3d Cir. 1996). The "proper" exhaustion requirement means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo,* 548 U.S. 81, 88 (2006).

The BOP has established regulations for inmate disciplinary proceedings. 28 C.F.R. § 541.5 *et seq.*[3] Upon belief that an inmate committed a prohibited act, a staff member will initiate disciplinary proceedings by issuing an incident report and commencing an investigation. 28 C.F.R. § 541.5(a). The incident report is then forwarded to the UDC for review, and the UDC

---

[3] Prior to August 1, 2011, these guidelines were found at 28 C.F.R. § 541.10 *et seq.* Although the incident report that forms the basis of Petition 1 was issued before the 2011 amendments took effect, the distinction is moot because the 2011 amendments did not materially alter the procedural requirements for BOP disciplinary actions. *See* 28 C.F.R. § 541.10 *et seq.* (2007 ed.).

will either refer the case to the DHO for a further hearing, or—if the allegations are lower-level

Code violations—it may adjudicate the matter itself. 28 C.F.R. § 541.7. The DHO may dismiss

any charge, determine that the inmate committed the prohibited act and impose any available

sanction for the act, or remand the incident report if it finds that further investigation and

review is needed. 28 C.F.R. § 541.8. The DHO must prepare a written report that is distributed

to the inmate and details:

> (1) Whether [the inmate was] advised of [the inmate's] rights during the DHO
> process;
> (2) The evidence relied on by the DHO;
> (3) The DHO's decision;
> (4) The sanction imposed by the DHO; and
> (5) The reason(s) for the sanction(s) imposed.

28 C.F.R. § 541.8(h).

Under the BOP's administrative remedy program, the first level appeal from a DHO

decision is an appeal to the Regional Director. 28 C.F.R. § 542.14(d)(2); *see also* 28 C.F.R. §

541.8(i). An inmate may appeal a DHO's decision by submitting the appropriate form to the

Regional Director within twenty calendar days from the date the inmate receives the DHO

report. *See* 28 C.F.R. § 542.15(a); *see also* 28 C.F.R. § 542.14(d)(2).[4] An inmate who is not

satisfied with the Regional Director's response may further appeal by submitting the appropriate

form to the General Counsel at BOP's Central Office within thirty calendar days from the date

the Regional Director signed the response. 28 C.F.R § 542.15(a). This appeal to the General

---

[4] Although the Code of Federal Regulations does not provide a specific time period for inmates to appeal DHO decisions to the Regional Director, the BOP has interpreted the regulations as providing a 20 day window from receipt of the DHO report. *See* (Petition 1, Doc. 8-2, at 11; Petition 2, Doc. 6-2, at 15; Petition 3, Doc. 6-2, at 13) ("The Inmate has been advised of his right to appeal this action through the Administrative Remedy Program within 20 calendar days of the receipt of this report.").

Counsel is the final step in the administrative appeals process for disciplinary decisions. *See* 28 C.F.R. § 542.15(a) ("Appeal to the General Counsel is the final administrative appeal."). The coordinator at any administrative level may reject an appeal that does not meet the requirements of these guidelines, and must provide a written explanation for the rejection. 28 C.F.R. § 542.17. If the defect is correctable, however, the coordinator shall grant leave for the inmate to correct the defect and resubmit the appeal. 28 C.F.R. § 542.17(b). If the defect is not deemed correctable and the inmate is therefore not given an opportunity to resubmit, that inmate may appeal the rejection to the next level. 28 C.F.R. § 542.17(c).

"Federal prisoners have a liberty interest in statutory good time credits." *Williams v. Werlinger*, 451 F. App'x 127, 129 (3d Cir. 2011). That interest is limited, however, because "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). Thus, "[w]here a prison disciplinary hearing may result in the loss of good time credits, . . . an inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity . . . to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67). The DHO decision must be supported by some evidence in the record. *Hill*, 472 U.S. at 454. This threshold is a low one, however, as "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill,* 472 U.S. at 455-56. Accordingly, the scope of judicial review of BOP disciplinary decisions is limited to confirming that the inmate was afforded the minimum procedural due process rights and that there was "some evidence" to support the DHO's conclusions. *See Hill*, 472 U.S. at 457.

## III.   DISCUSSION

Respondent advances two grounds for denying Petitioner's habeas claims. (Petition 1, Doc. 8, at 16; Petition 2, Doc 6, at 12; Petition 3, Doc. 6, at 12-13). Respondent first argues that Petitioner's claims are procedurally defaulted because he failed to properly exhaust administrative remedies before initiating each petition. (Petition 1, Doc. 8, at 16; Petition 2, Doc 6, at 12; Petition 3, Doc. 6, at 13). Alternatively, Respondent argues that Petitioner's claims should be denied on the merits. (Petition 1, Doc. 8, at 19; Petition 2, Doc 6, at 16; Petition 3, Doc. 6, at 16).

### A.   EXHAUSTION

Respondent asserts that all three petitions are subject to dismissal because Petitioner failed to properly exhaust his available administrative remedies. Although § 2241 does not explicitly require exhaustion, the United States Court of Appeals for the Third Circuit has consistently held that inmates must exhaust procedural remedies before bringing a federal habeas claim. *Speight v. Minor,* 245 F. App'x 213, 215 (3d Cir.2007); *Callwood v. Enos,* 230 F.3d 627, 634 (3d Cir.2000); *Moscato,* 98 F.3d at 760. In *Moscato,* the Third Circuit explained that exhaustion serves three valuable purposes: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." 98 F.3d at 761-62. An inmate's failure to exhaust administrative remedies may be excused, however, where the inmate can show that there was no opportunity to obtain adequate redress or that exhaustion would be futile. *Azzara v. Martinez*, No. 4:CV-11-1363, 2014 WL 2180163, at *6 (M.D. Pa. May 23, 2014).

Petitioner therefore needed to satisfy the procedural requirements of the BOP

administrative remedy program in order to properly exhaust his claims. Since his designation to the BOP, Petitioner has filed at least 67 administrative remedies. *See* (Administrative Remedy Generalized Retrieval, Petition 3, Doc. 6-2, at 32-65). However, Petitioner has continuously failed to fully prosecute these grievances through each tier of the BOP administrative remedy process.

With respect to the incident report at issue in Petition 1 (No. 2146523), Petitioner filed Administrative Remedy No. 757069-R1. (Petition 1, Doc. 1, ¶¶ 6-8). The Regional Director rejected the appeal because Petitioner did not include a copy of the DHO report, but advised Petitioner to resubmit his appeal with the DHO report included. (Petition 1, Doc. 8-2, at 49). At this point, rather than pursue further administrative review with the Regional Director, Petitioner filed an appeal with the Central Office. (Petition 1, Doc. 8-2, at 55). On December 19, 2013, the Central Office also rejected Petitioner's appeal, and instructed Petitioner to "follow the directions provided in the Region[al Director']s rejection notice." (Petition 1, Doc. 8-2, at 55). Petitioner did not submit any further appeals after the Central Office rejected his appeal. Rather than comply with the Central Office's directions, Petitioner chose to submit Petition 1. (Petition 1, Doc. 1).

With respect to the incident report at issue in Petition 2 (No. 2226926), Petitioner claims to have filed Administrative Remedy Nos. 754039-R1 and 757063-R1. (Petition 2, Doc. 1, ¶¶ 6-7). The Regional Director rejected Remedy No. 754039-R1 as untimely on October 21, 2013, but advised Petitioner to resubmit his appeal with a memo explaining his untimeliness. (Petition 2, Doc. 6-2, at 33). Petitioner, however, did not pursue further administrative review with the Regional Director, and instead filed an appeal with the Central Office. (Petition 2, Doc. 6-2, at 42). On November 18, 2013, the Central Office also rejected Petitioner's appeal, and directed

Petitioner to follow the instructions provided by the Regional Director. (Petition 2, Doc. 6-2, at 42) ("Provide staff memo to the Region stating reason for your untimeliness, along with your resubmission."). Petitioner did not follow this instruction, and took no further action with regard to this appeal. Remedy No. 757063-R1 was also rejected by the Regional Director, on November 8, 2013, because Petitioner did not include a copy of the DHO report. (Petition 2, Doc. 6-2, at 40). The rejection notice provided leave for Petitioner to resubmit his appeal with the DHO report included. (Petition 2, Doc. 6-2, at 40). At this point, rather than pursue further administrative review with the Regional Director, Petitioner filed an appeal with the Central Office. (Petition 2, Doc. 6-2, at 46). The Central Office also rejected Petitioner's appeal, and instructed Petitioner to "follow the directions provided in the Region[al Director']s rejection notice." (Petition 2, Doc. 6-2, at 46). Petitioner did not submit any further appeals with respect to No. 757063-R1 after the Central Office rejected his appeal. Rather than comply with the Central Office's directions as to Nos. 754039-R1 and 757063-R1, Petitioner chose to submit Petition 2. (Petition 2, Doc. 1).

With respect to the incident report at issue in Petition 3 (No. 2288984), Petitioner claims to have filed Administrative Remedy Nos. 754039-R1 and 757046-R1. (Petition 3, Doc. 1 ¶¶ 6-8). As noted above, No. 754039-R1 was rejected by the Regional Director as untimely, and Petitioner never resubmitted his appeal to the Regional Director with an explanation for his untimeliness. (Petition 3, Doc. 6-2, at 48, 57). The Regional Director also rejected No. 757046-R1 because Petitioner failed to include a copy of the DHO report, but advised Petitioner to resubmit his appeal with the DHO report included. (Petition 3, Doc. 6-2, at 54). Rather than pursue further administrative review with the Regional Director, Petitioner filed an appeal with the Central Office. (Petition 3, Doc. 6-2, at 63). On December 19, 2013, the Central Office also

rejected Petitioner's appeal, and instructed Petitioner to "follow the directions provided in the Region[al Director']s rejection notice." (Petition 3, Doc. 6-2, at 63). Petitioner did not submit any further appeals with respect to No. 757046-R1 after the Central Office rejected his appeal. Rather than comply with the Central Office's directions, Petitioner chose to submit Petition 3. (Petition 3, Doc. 1).

Each appeal that Petitioner submitted with respect to the incident reports at issue in Petitions 1-3 was rejected by the Regional Director for the failure to comply with the BOP's administrative remedy procedure.[5] (Petition 1, Doc. 8-2, at 49; Petition 2, Doc. 6-2, at 33, 40; Petition 3, Doc. 6-2, at 48, 54). However, the Regional Director found the defects in all of these appeals to be curable, and instructed Petitioner to resubmit each appeal with the requested additional materials. *See* 28 C.F.R. § 542.17(b). Petitioner never resubmitted these appeals to the Regional Director, and instead appealed them all to the Central Office. (Petition 1, Doc. 8-2, at 55; Petition 2, Doc. 6-2, at 42, 46; Petition 3, Doc. 6-2, at 57, 63). Because the appeals were never corrected and resubmitted to the Regional Director, they were never properly exhausted at the regional level. *Woodford*, 548 U.S. at 88 ("[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."). Moreover, BOP's administrative remedy procedure only permits an inmate to appeal the Regional Director's rejection to the next level where the inmate is not given an opportunity to correct the defect. *See* 28 C.F.R. § 542.17(c). Here, however, Petitioner was provided the opportunity to correct the defects in each of his appeals, and therefore he was not entitled to appeal to the Central Office. *See* 28 C.F.R. §

---

[5] Nos. 757069-R1, 757063-R1, and 757046-R1 were rejected because they failed to include the DHO report, whereas No. 754039-R1 was rejected as untimely.

542.17(c). Accordingly, none of Petitioner's appeals were properly exhausted at the Central Office level, either. Because Petitioner consistently failed to properly exhaust his BOP appeals, he has procedurally defaulted each of his claims with respect to Petitions 1-3.

Notwithstanding the procedural default, Petitioner's failure to exhaust may be excused if he shows that exhaustion was futile. Although Petitioner does not specifically allege futility, he does claim that he was hampered in his efforts to exhaust his BOP appeals process because prison officials refused to release his DHO reports for each incident report at issue. (Petition 1, Doc. 1, ¶ 13; Petition 2, Doc. 1, ¶ 13; Petition 3, Doc. 1, ¶ 13). However, a delay in providing the DHO report does not entitle an inmate to habeas relief unless the inmate can show that the delay was prejudicial to his appeal. *See Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007). Here, Petitioner fails to demonstrate any prejudicial effect. As a preliminary matter, the window to appeal the DHO's ruling does not begin to run until the inmate receives the DHO report. *See* (Petition 1, Doc. 8-2, at 11; Petition 2, Doc. 6-2, at 15; Petition 3, Doc. 6-2, at 13) ("The Inmate has been advised of his right to appeal this action through the Administrative Remedy Program within 20 calendar days of the receipt of this report."). Moreover, Petitioner never submitted any evidence in support of his conclusory allegation that he was intentionally denied the reports. In contrast, Respondent provides documentation that a prison staff member personally signed to confirm delivery of each DHO report to the Petitioner. (Petition 1, Doc. 8-2, at 11; Petition 2, Doc. 6-2, at 15; Petition 3, Doc. 6-2, at 13). Because Petitioner did not set forth any efforts he made to obtain the DHO reports, and because his administrative appeals were rejected with leave to amend rather than denied outright, Petitioner's argument that the delay in receiving his DHO reports warrants excusal of the exhaustion requirement is at best premature. *See Corley v. Hogsten*, No. CIV.A. 0:11-00097, 2011

WL 3809939, at *3 (E.D. Ky. Aug. 25, 2011). Accordingly, the claims raised in each habeas petition (Petition 1, Doc. 1; Petition 2, Doc. 1; Petition 3, Doc. 1) are unexhausted, and are properly dismissed on this basis.

      B.    MERITS

Even if the Court were to find Petitioner's claims to be exhausted, the claims lack merit. All procedural requirements established in *Wolff* and *Hill* were met in these three cases.

### 1. Procedural Due Process

Petitioner claims that he was denied the right to a staff representative and to call witnesses at each of his DHO hearings. (Petition 1, Doc. 1, ¶ 13; Petition 2, Doc. 1, ¶ 13; Petition 3, Doc. 1, ¶ 13). As discussed above, Petitioner also claims that he did not receive the DHO reports for each of these incidents. (Petition 1, Doc. 1, ¶ 13; Petition 2, Doc. 1, ¶ 13; Petition 3, Doc. 1, ¶ 13). However, Respondent provides documentation that each DHO report was personally signed and dated by a prison staff member to confirm delivery to the Petitioner. (Petition 1, Doc. 8-2, at 11; Petition 2, Doc. 6-2, at 15; Petition 3, Doc. 6-2, at 13).

With respect to the initial DHO hearing that involved the incident report at issue in Petition 1, the DHO report documented that Petitioner declined the assistance of a staff representative and confirmed that he did not want any witnesses, despite his earlier request to present witnesses when first given the incident report. (Petition 1, Doc. 8-2, at 10). Upon the DHO's rehearing on remand, Petitioner requested Officer Davis to serve as his staff representative, but then declined the right to a staff representative and to call witnesses after Officer Davis chose not to represent him. (Petition 1, Doc. 8-2, at 19-20). The record clarifies that Petitioner was given the option of having another staff representative appointed once Officer Davis declined the representation, but Petitioner opted to proceed without a staff representative. (Petition 1, Doc. 8-2, at 19-20). Prison staff therefore acted in accordance with

BOP regulations. *See* 28 C.F.R. § 541.8 ("If your staff representative is not available for the scheduled hearing, you may either select another staff representative, request the hearing be postponed for a reasonable amount of time until your staff representative can appear, or proceed without a staff representative."). The DHO report for the rehearing also states that Petitioner confirmed that he waived his rights to a staff representative or witnesses at the rehearing itself. (Petition 1, Doc. 8-2, at 22).

As for the DHO hearing at issue in Petition 2, Petitioner initially requested Officer Davis to serve as his staff representative, but ultimately was represented by religious services assistant J. Houston because Davis was on military leave. (Petition 2, Doc. 6-2, at 11, 14); *see* 28 C.F.R. § 541.8. Additionally, the notice of disciplinary hearing and DHO report both indicate that Petitioner voluntarily declined to present witnesses at his DHO hearing, although he initially indicated that he did want witnesses when Petitioner was first delivered the incident report. (Petition 2, Doc. 6-2, at 11, 14).

With respect to the DHO hearing contested in Petition 3, in addition to asserting that he was denied the right to a staff representative and to call witnesses, Petitioner also claims that he did not receive a copy of the incident report at least twenty-four hours in advance of the DHO hearing. (Petition 3, Doc. 1, ¶ 13). However, Acting Activities Lieutenant T. Caudill attests that he personally gave Petitioner a copy of the incident report on April 6, 2012. (Petition 3, Doc. 6-2, at 8). Furthermore, the record reflects that Petitioner was permitted to submit a witness statement from his cellmate, and that the statement was considered as part of the DHO's decision. (Petition 3, Doc. 6-2, at 12). Lastly, the DHO report states that Petitioner confirmed at the hearing itself that he did not want to exercise his right to have a staff representative present on his behalf. (Petition 3, Doc. 6-2, at 12).

### 2. Evidentiary Standard

Petitioner also challenges the weight of the evidence with respect to the DHO's findings in Petition 1 and Petition 3. In his traverse to the response to Petition 1, Petitioner contends that he wanted exculpatory hallway video footage to be presented at his DHO hearing. (Petition 1, Doc. 9, at 3). However, the DHO report states that there was no video of the altercation inside Petitioner's cell. (Petition 1, Doc. 8-2, at 22). Moreover to the extent that any hallway video footage might have been available, the DHO report explicitly states that Petitioner failed to request video review. (Petition 1, Doc. 8-2, at 22).

In Petition 3, Petitioner again contends that the DHO did not review video footage, and also that the DHO failed to consider written statements presented at the hearing. (Petition 3, Doc. 1, ¶ 13). Nowhere in the record, however, is there an indication that Petitioner ever requested to present video evidence, or that any such evidence existed and was denied by the DHO. Even assuming, *arguendo*, that video footage did exist and was denied by the DHO, that evidence would have been immaterial because this proceeding related to letters that were produced at the DHO hearing and accompanied by handwriting samples from both the Petitioner and his cellmate. *See Hatten v. Warden Lewisburg USP*, 546 F. App'x 79, 81 (3d Cir. 2013). Lastly, the DHO report clearly contradicts Petitioner's claim that his cellmate's written statement presented at hearing did not receive consideration. (Petition 3, Doc. 6-2, at 12). The DHO instead wrote that he considered the handwriting of the cellmate's statement and found that it did not match handwriting in the intercepted letters, and then determined that the handwriting analysis (including the DHO's finding that Petitioner's handwriting samples matched the handwriting in the intercepted letters) carried greater weight than the content of the cellmate's statement itself. (Petition 3, Doc. 6-2, at 12).

In all three instances, the record reflects that the DHO met the evidentiary standard when he determined that Petitioner committed the prohibited acts. "The sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer." *Moles v. Holt*, 221 F. App'x 92, 94 (3d Cir. 2007). Here, however, the DHO had considerably more evidentiary support at each hearing. At the DHO rehearing upon which Petition 1 is based, the DHO considered medical reports and photos of the staff members' injuries to be persuasive evidence. (Petition 1, Doc. 8-2, at 22). Petition 2 attacks the validity of a DHO hearing in which Petitioner admitted stating that he had committed the prohibited acts. (Petition 2, Doc. 6-2, at 14). Lastly, the DHO hearing contested in Petition 3 involved a handwriting dispute where the DHO evaluated handwriting samples from both the Petitioner and the Petitioner's cellmate in making his determination. (Petition 3, Doc. 6-2, at 12). The DHO's decisions in each of these hearings clearly exceeds the "some evidence" standard.

### 3.  Sanctions Imposed

As a final argument, Petitioner asserts that the aggregate amount of good conduct time taken from him as sanctions for the various prohibited acts exceeded the maximum amount that could be taken in calendar year 2012 under BOP regulations. (Petition 1, Doc. 1, ¶ 13; Petition 2, Doc. 1, ¶ 13; Petition 3, Doc. 1, ¶ 13). As a preliminary matter, the Court notes that Petitioner does not contend that any individual sanction for a prohibited act fell outside the range of acceptable punishments outlined by the applicable regulation for that prohibited act. *See* 28 C.F.R. § 541.3(b), Table 1. In total, Petitioner was disallowed 99 days of good conduct time credit and forfeited another 161 days of non-vested good conduct time credit. Under the Prison Litigation Reform Act (PLRA), a federal inmate whose crimes occurred after April 26,

1996 may earn up to 54 days of good conduct time credit in a given year. 18 U.S.C. § 3624(b). That credit does not vest, however, until the date of the prisoner's release from custody. 18 U.S.C. § 3624(b)(2). Disallowance of good conduct time reduces the amount of good conduct time that an inmate may earn in that particular year. 28 C.F.R. § 541.3(b), Table 1. Accordingly, a DHO may only disallow the amount of good conduct time that is available to the inmate in a given year, which in Petitioner's case would be a maximum of 54 days. *See* 28 C.F.R. § 541.3(b), Table 1. A DHO may impose forfeiture of non-vested good conduct time, on the other hand, up to the "total days in 'non-vested' status at the time of misconduct (less previous forfeiture)." BOP Program Statement 5270.09, at 12 (eff. Aug. 1, 2011). An inmate that has been incarcerated for multiple years and has not already forfeited good conduct time for previous prohibited acts would thus have more than 54 days of non-vested good conduct time available for forfeiture. *See* 28 C.F.R. § 541.3(b), Table 1 (listing under Available Sanctions for High Severity Level Prohibited Acts, "Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less . . . ."). Because there is no annual limit to the amount of non-vested good conduct time that may be forfeited, and because Petitioner does not allege that the number of days forfeited exceeded the number of non-vested good conduct days he had accrued throughout his incarceration, this Court finds that the aggregate forfeiture of 161 days imposed as a result of three separate incident reports was in keeping with BOP regulations. *See Hurst v. Bledsoe*, No. 3:10CV1868, 2011 WL 320576, at *6 (M.D. Pa. Jan. 28, 2011) ("The only apparent limit to forfeiture is that an inmate may not forfeit more good time credit days than he has at the time of his violation.").

Petitioner's challenge to the cumulative 99 days that were disallowed in the three DHO reports must also fail. As discussed above, disallowance is the loss of good conduct time that

could be earned in the upcoming year, and thus is limited to the amount of good conduct time that the inmate could potentially earn in that year. *See* 28 C.F.R. § 541.3(b), Table 1. Because Petitioner's crimes were committed after the PLRA was enacted, the maximum amount of good conduct time credit he could earn in a given year, and thus be disallowed as a sanction, is 54 days. 28 C.F.R. § 541.4. Petitioner is incorrect, however, in his assertion that he was disallowed 99 days of good conduct time for sanctions imposed in calendar year 2012. Although the DHO rehearing that forms the basis of Petition 1 occurred on April 6, 2012, the DHO chose to uphold the sanctions that had already been imposed on Petitioner at the original DHO hearing for this incident report on October 7, 2011. *See* (Petition 1, Doc. 8-2, at 9, 23). Specifically, the DHO noted in Section VI of the DHO report that "[s]anctions began 10/07/2011," the date of the initial DHO hearing. (Petition 1, Doc. 8-2, at 23). The DHO's determination that the sanctions were effective as of October 7, 2011 also comports with Petitioner's own understanding at the time, as the DHO rehearing report quotes Petitioner as stating at the rehearing, "I have already done the time." (Petition 1, Doc. 8-2, at 22). Accordingly, this Court determines that the sanctions imposed upon rehearing for Incident Report No. 2146523, the basis for Petition 1, were effective as of October 7, 2011. This leaves only 44 days of good conduct time disallowed in 2012 for Incident Report Nos. 2226926 and 2288984, the sanctions that form the basis of Petitions 2 and 3. (Petition 2, Doc. 6-2, at 14; Petition 3, Doc. 6-2, at 13). Because the 44 days of good conduct time disallowed in 2012 as a result of the remaining two DHO reports is less than the 54 days of good conduct time that Petitioner could have potentially earned that year, the aggregate amount of time disallowed by the DHOs was in accordance with BOP regulations. *See* 28 C.F.R. § 541.3.

For these reasons, even if Petitioner's claims were properly exhausted, they are each without merit.

## IV.   RECOMMENDATION

Based on the foregoing, it is recommended that Petitioner's Petition for Writ of Habeas Corpus Docket No. 1:14-CV-00039 (Petition 1, Doc. 1), Petition for Writ of Habeas Corpus Docket No. 1:14-CV-00054 (Petition 2, Doc. 1), and Petition for Writ of Habeas Corpus Docket No. 1:14-CV-00096 (Petition 3, Doc. 1) each be **DENIED**. It is further recommended that the Court decline to issue a certificate of appealability, as the Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated: **August 17, 2015**                    *s/ Karoline Mehalchick*

                                      **KAROLINE MEHALCHICK**
                                      **United States Magistrate Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

VICTOR TEON LINDSEY, II,

    Petitioner,

   v.

E.J. THOMAS,

    Respondent.

CIVIL ACTION NOS. 1:14-CV-00039,
1:14-CV-00054, AND 1:14-CV-00096

(KANE, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 17, 2015.** Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **August 17, 2015**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**